# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 4006 | **DATE** | 4/16/2002 |
| **CASE TITLE** | MARK RICHARDS vs. THOMAS F. PAGE | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] The petition for writ of habeas corpus is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | APR 18 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 20 |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| EF | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES of AMERICA, ex rel.<br>MARK W. RICHARDS,<br><br>               Petitioner,<br><br>vs.<br><br>THOMAS F. PAGE,<br><br>               Respondent. | No. 99 C 4006<br><br>HONORABLE CHARLES R. NORGLE<br><br>**DOCKETED**<br>APR 1 8 2002 |

**OPINION AND ORDER**

CHARLES R. NORGLE, Sr., District Judge:

Before the court is Mark Richards' petition for writ of habeas corpus under 28 U.S.C. § 2254. For the following reasons, the petition is denied.

**I. BACKGROUND**

Petitioner, Mark Richards, is a large person (well over six feet tall and approximately 300 lbs.), who is no stranger to violence. In the early part of 1991, Richards pleaded guilty to one count of aggravated battery, arising out of an incident where Richards and his father used a pipe to beat another man, David Burton. As a result of his plea to the aggravated battery of Burton, Richards was sentenced to 30 months probation and ordered to pay restitution. At the time of sentencing, the state nolle prossed a second charge of aggravated battery arising out of the same incident.

Richards' probation did not deter him from committing further violence. On the night of July 29, 1991, Richards was drinking in a tavern in Manhattan, Illinois. Another patron in the tavern was Terrence Lee, who was approximately five feet five inches tall, and weighed approximately 140-150 lbs. During the evening, Richards gave Lee a hard time, and repeatedly referred to Lee as a "fag"

and a "queer." After the tavern closed, at about 1:00 a.m., Richards and a companion got into Richards' car to leave. Lee was walking through the parking lot at the same time, and Richards made another derogatory remark to Lee. Lee responded to Richards with an obscene gesture, and then turned and walked away from Richards' car.

Richards got out of his car and charged Lee. Richards grabbed Lee from behind and threw him against a wall, knocking him unconscious. Richards then jumped and/or stomped on Lee's head at least ten times. Richards' companion approached and told Richards to stop, to which Richards responded "I'm loving this." (R. 14, Ex. B, pg. 2.) Richards kicked Lee a few more times, and then left with his companion to go to another tavern and continue drinking. While driving away, Richards laughed, and said to his companion that "he hoped he didn't kill the guy." (R. 14, Ex. A, pg. 6.)

Lee sustained severe injuries as a result of the attack, and Richards was charged with attempted murder and aggravated battery. The state also moved to revoke Richards' probation for the earlier aggravated battery of Burton.

During pre-trial proceedings, Richards was represented by Gerald Kielian. Prior to trial, the state placed Kielian on a witness list, and moved to disqualify him. The trial judge denied the motion to disqualify. However, at a later date, Kielian later moved to withdraw due to a conflict of interest. Richards was present at the time Kielian moved to withdraw, and agreed to the withdrawal. Richards was then appointed another attorney, Joseph Polito.

Richards' case proceeded to trial, where the jury heard evidence from a number of witnesses, including persons that saw the attack, medical personnel, investigating officers, and Lee. The jury found Richards guilty of both attempted murder and aggravated battery. Richards was sentenced to 27 years imprisonment for the attempted murder of Lee. In addition, Richards' probation for the

aggravated battery of Burton was revoked, and he received a three year concurrent sentence for that crime.

Richards filed a direct appeal, arguing that the jury should have been given a reckless conduct instruction, and that the appellate court should correct the mittimus to reflect that the conviction for the Burton aggravated battery was for only one count, rather than two. The Illinois Appellate Court affirmed Richards' conviction for attempted murder, and ordered the mittimus be corrected.

Richards filed a post-conviction petition, which was denied. Richards appealed, raising several issues.[1] The Illinois Appellate Court issued a thorough and lengthy opinion addressing all of Richards' claims, and found them to be without merit or waived. (R. 14, Ex. D.)

Richards now brings a petition for relief under 28 U.S.C. § 2254, alleging: (1) a violation of his sixth amendment right to counsel of choice; (2) ineffective assistance counsel; (3) improper admission of the victim's testimony; and (4) an unfair trial due to judicial bias and corruption.

## II. DISCUSSION

The court first discusses the general rules of federal habeas review, including procedural default, and then discusses each of Richards' claims.

### A. Standard of review:

Richards' case is governed by 28 U.S.C. § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act ("AEDPA"). Section 2254 sets a high hurdle for habeas relief. The statute states:

---

[1] Richards' post-conviction petition raised the following issues: (1) the trial judge failed to disclose her extra-judicial relationship with Richards' extended family; (2) Richards' right to counsel was violated when the state attempted to disqualify his counsel; (3) ineffective assistance of appellate counsel; (4) Richards' plea of guilty to beating Burton violated Richards' right to a jury trial on those charges; and (5) the trial judge improperly admitted aggravating evidence.

3

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court recently examined § 2254(d)(1), and held that the "contrary to" clause and the "unreasonable application" clause encompass two types of error that will cause a writ to issue. See Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 1516-23 (2000) (opinion of O'Connor, J.). The "contrary to" clause describes a state court decision that is opposite to the law announced by the Supreme Court, or where the state court "confronts facts that are materially indistinguishable from . . . relevant Supreme Court precedent," and reaches a conclusion opposite to that of the Supreme Court. See id. at 1519 (also describing "contrary to" as "diametrically different," "opposite in character or nature," or "mutually opposed"); see also Boss v. Pierce, 263 F.3d 734, 739 (7th Cir. 2001) (discussing Williams).

The "unreasonable application" clause of § 2254(d)(1) governs alleged errors in the state court's application of Supreme Court precedent to the facts of the case. See Boss, 263 F.3d at 739; see also Williams, 120 S. Ct. at 1520-21 (discussing different scenarios of unreasonable application of facts, but ruling that "[f]or now it is sufficient to hold that when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case, a federal court applying

4

§ 2254(d)(1) may conclude that the state-court decision falls within that provision's 'unreasonable application' clause."). While federal courts have an independent duty to say what the law is, Williams, 120 S. Ct. at 1522, an erroneous application of the law by a state court will not be grounds for relief unless the error was also unreasonable. See id.; Boss, 263 F.3d at 739. Whether the state court's decision was reasonable is an objective question that does not necessarily turn on the correctness of the state court's decision. See Williams, 120 S. Ct. at 1521-22 (holding that a federal habeas court should not issue a writ simply because it concludes that the state court erroneously applied federal law, rather, the application must also be unreasonable); cf. Schaff v. Snyder 190 F.3d 513, 523 (7th Cir. 1999) (holding that a federal habeas court should uphold a state court ruling that is minimally consistent with the facts and circumstances of the case). It is only when the application is unreasonably erroneous that habeas relief may be granted. See Williams, 120 S. Ct. at 1520-22; Washington v. Smith, 219 F.3d 620, 628 & n.5 (7th Cir. 2000).

Section 2254(d)(2) involves the state court's determination of the facts, which are presumed correct. See 28 U.S.C. 2254(e)(1); see also Rodriguez v. Peters, 63 F.3d 546, 554 (7th Cir.1995) ("Factual findings that have been decided by the state trial or appellate courts are presumptively correct."). The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**B.  Procedural default:**

Section 2254 requires a habeas petitioner to exhaust the remedies available in state court prior to pursuing federal habeas relief. See 28 U.S.C. § 2254(b)(1)(A); O'Sullivan v. Boerckel, 526 U.S. 838, 842-43 (1999); see also Spreitzer v. Schomig, 219 F.3d 639, 644-45 (7th Cir. 2000) (discussing exhaustion of habeas claims).

5

In addition to exhausting the remedies available in state court, a habeas petitioner is procedurally barred from raising claims in a federal habeas petition that were not raised in the state court proceedings. See O'Sullivan, 526 U.S. at 848 (holding that a petitioner's failure to present three claims to the Illinois Supreme Court for discretionary review resulted in a procedural default of those claims). Fair presentment of a constitutional claim requires a habeas petitioner to present both the operative facts and the controlling legal principles to the state court before bringing the claim in a federal habeas petition. Cf. Rodriguez v. Scillia, 193 F.3d 913, 916 (7th Cir.1999) (discussing exhaustion of claims) (citing Picard v. Connor, 404 U.S. 270, 277 (1971)). Thus, a habeas petitioner procedurally defaults, or waives, any claim raised for the first time in federal court.

Also, federal habeas courts cannot review claims that the state court has disposed of on state law grounds. See Lambrix v. Singletary, 520 U.S. 518, 523-24 (1997) (noting that where "the state law determination is sufficient to sustain the decree, any opinion . . . on the federal question would be purely advisory.") (citing Herb v. Pitcairn, 324 U.S. 117, 125-26 (1945)). Put another way, federal habeas relief is not available if the state court decision rests on state law that "is independent of the federal question and adequate to support the judgment." See Coleman v. Thompson, 501 U.S. 722, 729 (1991).

Waiver under state law is an independent and adequate state law ground for dismissal that can preclude federal habeas relief. When a state court determines that a habeas petitioner waives a claim in state court, that waiver is an independent and adequate state law determination that bars federal habeas relief. See Harris v. Reed, 489 U.S. 255, 258 (1989) (citing Wainwright v. Sykes, 433 U.S. 72, 86-87 (1977)); see also Patrasso v. Nelson, 121 F.3d 297, 301-02 (7th Cir. 1997) (comparing waiver and res judicata under Illinois law, and the consequences of each on subsequent

6

federal habeas review). But, for waiver to bar federal habeas review, the last state court to consider the question must have "actually relied on procedural default as the basis for its decision." Braun v. Powell, 227 F.3d 908, 912 (7th Cir. 2000). If that is not so, the merits of the issue are preserved for federal habeas review. See id.

Federal courts may review defaulted claims only if: (1) the petitioner shows cause for failure to raise the claim, and actual prejudice resulting therefrom; or (2) refusal to consider the defaulted claim would result in a fundamental miscarriage of justice, where a constitutional violation has resulted in the conviction of one who is actually innocent. See Edwards v. Carpenter, 529 U.S. 446, 120 S. Ct. 1587, 1591 (2000); Spreitzer, 219 F.3d at 647-48; Rodriguez, 193 F.3d at 917 (citing cases). With these principles in mind, the court examines Richards' petition.

**C. Richards' Petition:**

Richards raises four claims. The court addresses the factual basis for each issue in turn, and, as discussed below, finds that each claim is either procedurally defaulted or without merit.

**1. Right to Counsel of Choice:**

First, Richards claims that his right to counsel of choice was infringed when the prosecution moved to disqualify his lawyer. Richards raised this issue in his post-conviction petition, and the Illinois Appellate Court rejected it on its merits. (See R. 14, Ex. D, pp. 6-7.) On habeas review, this court's role is to determine whether the Illinois Appellate Court's analysis was contrary to or an unreasonable application of federal Supreme Court precedent. 28 U.S.C. § 2254(d)(1). It was neither.

The sixth amendment, applicable to the states through the fourteenth amendment, encompasses a limited right to counsel of choice. See Wheat v. United States, 486 U.S. 153, 159

7

(1988); United States v. Carrera, 259 F.3d 818, 824-26 (7th Cir. 2001); United States v. Hanhardt, 155 F. Supp. 2d 861, 867-70 (N.D. Ill. 2001) (chambers opinion). The Illinois Court correctly identified the right to counsel issue, and did not unreasonably apply the law to Richards' case. (See R. 14, Ex. D, pp. 6-7.) The Illinois Court noted that a criminal defendant has a right to counsel of choice, but Richards was not denied that right because the trial judge denied the state's motion to disqualify. Later, Richards' counsel was allowed to withdraw because of a conflict of interest, and Richards acquiesced to the withdrawal. In light of these facts, the Illinois Appellate Court correctly and reasonably concluded that Richards' limited right to counsel of choice was not infringed. This claim is rejected on its merits.

### 2. Ineffective Assistance of Trial and Appellate Counsel:

Richards claims that: (1) his appellate counsel failed to raise a number of issues; and (2) trial counsel was ineffective due to conflicts of interest. The claim concerning appellate counsel is governed by the familiar standards of Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). Richards must first demonstrate that appellate counsel's performance was deficient, meaning that it fell below objective standards for reasonably effective representation. See id. at 687-88. Then, Richards has to show that the deficient performance prejudiced his appeal, meaning that but for the deficient representation, there is a reasonable probability that the result of the appeal would have been different. See id. at 694; see also Morris v. United States, 264 F.3d 726, 727 (7th Cir. 2001) (noting that Strickland prejudice is shown if the court's confidence in the outcome is undermined).

Richards' claims about trial counsel's conflicts of interest are governed by a somewhat relaxed Strickland standard, which the Supreme Court recently discussed in Mickens v. Taylor, – S. Ct. –, 2002 WL 459251 (Mar. 27, 2002). Under Mickens, if Richards demonstrates that his trial

8

counsel had a conflict of interest, and that conflict affected the representation, then Richards need not demonstrate Strickland prejudice. See Mickens, 2002 WL 459251 at *5.

### a. Appellate Counsel's Performance:

In Richards' post-conviction appeal, he argued that his appellate counsel was ineffective for failing to raise five issues. (See R. 14, Ex. D, pp. 7-8.) In his habeas petition, however, Richards claims that his appellate counsel was ineffective for failing to raise "a number of issues," but does not identify the particular issues that counsel should have raised. Liberally construing Richards' petition, the court will examine the same five issues that the Illinois Appellate Court addressed. Those issues are appellate counsel's decision not to raise: (1) improper identification testimony; (2) potentially improper impeachment testimony; (3) improper denial of severance of the attempted murder charge from the aggravated battery charge; (4) improper testimony from the victim; and (5) improper jury instructions. Again, the court's review of these issues is to determine whether the Illinois Appellate Court's analysis was contrary to or an unreasonable application of federal Supreme Court precedent. 28 U.S.C. § 2254(d)(1).

The Illinois Appellate Court's analysis of these five issues was reasonable and correct. The Court correctly applied the Strickland analysis to the issues and found that Richards failed to demonstrate that his appellate counsel was ineffective for not raising the five issues that Richards claimed should have been raised. (See R. 14, Ex. D, pp. 8-15.) The Court carefully addressed each of the claims, the factual basis for the claims, and the applicable legal authority. (See id.) For example, as to Richards' claim that the trial judge improperly allowed hearsay identification testimony, the Illinois Appellate Court examined the trial record, and found no error in allowing the

9

identification testimony. (See id. at pp. 8-9.) Therefore, the Court concluded, Richards' appellate counsel was not ineffective in not raising the issue on appeal.

Richards' claim about counsel's failure to raise an improper impeachment issue was based on a motion in limine concerning Richards' possible testimony. (See id. at pp. 9-10.) Richards contemplated testifying, but was concerned that the state would use an earlier conviction for aggravated battery to impeach his testimony. Richards filed a motion in limine, asking the judge to forbid the state from such impeachment. The trial judge ruled that Richards could be impeached with the fact of conviction, but that the state could not mention that the conviction was for aggravated battery. As a result of this ruling, Richards argued that he chose not to testify. The Illinois Appellate Court ruled that Richards' decision not to testify was a waiver of the impeachment issue, and therefore Richards' appellate counsel was not ineffective in failing to raise the issue on appeal. (See id.)

Next, the Illinois Appellate Court looked at Richards' claim that counsel was ineffective for not raising the issue of severing the attempted murder charge from the aggravated battery charge. (See R. 14, Ex. D, pp. 11-12.) Richards relied on People v. Nickolopoulos, 185 N.E.2d 209 (Ill. 1962) to argue that evidence of Lee's injuries that was admissible to prove aggravated battery, but was irrelevant and unfairly prejudicial for the attempted murder charge. Thus, Richards argued that the charges should have been severed, and appellate counsel should have pursued this issue. The Illinois Appellate Court found Nickolopoulos distinguishable from Richards' case, and that it would not have required severance of the charges. (See R. 14, Ex. D, pp. 11-12.) Therefore, the Court concluded that Richards' appellate counsel was not ineffective in failing to raise the issue.

Richards' next claim of ineffective appellate counsel was based on the trial judge allowing Lee to testify about the injuries he suffered in the attack. Richards claimed that Lee's testimony was hearsay and unfairly prejudicial. (See id. at pg. 12-13.) The Illinois Appellate Court ruled that any error that arose from this testimony was harmless, and therefore counsel was not ineffective for not pursuing the issue. (See id.)

Finally, Richards argued that appellate counsel should have argued that the jury instructions were improper. (See id. at pp. 13-15.) The Illinois Appellate Court examined the record, and found that the written instructions given to the jury were proper and correct, thereby curing any deficiency with earlier oral instructions. Thus, the court concluded that appellate counsel was not ineffective for not bringing this issue.

In sum, the Illinois Appellate Court carefully and thoroughly addressed each of Richards' claims of ineffective assistance of counsel. The Court examined the record, including transcripts, analyzed the law on the issues that Richards argued should have been raised, and found that appellate counsel was not ineffective under Strickland. There was nothing unreasonable about the Illinois Court's treatment of Richards' ineffective assistance of appellate counsel claims. Accordingly, this claim is denied on its merits.

### b. Trial Counsel:

Richards asserts two claims concerning his trial counsel, Joseph Polito.[2] According to Richards, Polito was "a friend of the court" who did not represent Richards' interests. Richards also claims that after his trial, Polito represented the trial judge in other matters. The court construes

---

[2] Mr. Polito is the attorney that represented Richards at trial. Mr. Polito was appointed to represent Richards after Richards' original attorney, Mr. Kielian, withdrew from the case due to a conflict of interest.

11

these allegations as a claim that Polito had conflicts of interest. A conflict of interest involving counsel can be the basis for habeas relief without a showing of Strickland prejudice, if the petitioner demonstrates that the conflict of interest adversely affected counsel's performance. See Mickens, 2002 WL 459251 at *5. Richards, however, has waived this claim because he failed to present the issue to the Illinois courts.

Failure to present a claim to the state courts bars later federal habeas review of the claim, unless the petitioner can demonstrate cause for failing to present the claim and prejudice resulting therefrom, or a fundamental miscarriage of justice, which requires a showing of actual innocence. See Edwards, 120 S. Ct. at 1591; O'Sullivan, 526 U.S. at 848; Spreitzer, 219 F.3d at 647-48; Rodriguez, 193 F.3d at 916-17. Richards presents nothing on which to apply either exception, barring habeas review.

Moreover, if the court were to reach the merits of the claim, the court would find that Richards fails to demonstrate that Polito was ineffective. Mickens requires Richards to present some evidence of conflict of interest that adversely affect counsel's trial performance. Mickens, 2002 WL 459251 at 5. Richards presents nothing to support such findings. For example, Richards makes a cursory statement that Polito did not represent Richards' interest, but nothing more. There is no development of the issue. Similarly, Richards states that after his trial, Polito represented the trial judge in some other unspecified matter. There is nothing to suggest that Polito's performance at Richards' trial was skewed by Polito's later representation of the trial judge. Accordingly, if necessary, the court would find that the claim of ineffective assistance of trial counsel is without merit.

### 3. Prejudicial Testimony:

Richards asserts that the trial judge erred in allowing Lee to testify about the extent and nature of his injuries because Lee had no recollection of the attack and the testimony was unfairly prejudicial. Respondent argues that the issue is procedurally defaulted because Richards did not raise it in the state court. Despite Respondent's argument, the court will address the merits of this claim. Richards raised this issue in his post-conviction petition as part of his ineffective assistance of appellate counsel claim. (See R. 14, Ex. D, pp. 12-13.) Liberally construing Richards' pro se habeas petition, he presented the merits of the claim to the state court. Moreover, the court may deny a habeas claim on its merits, not withstanding a possible procedural default. 28 U.S.C. § 2254(b)(2).

At trial, Lee testified about the injuries he received as a result of Richards' attack. Lee testified about his personal knowledge of his injuries, and that testimony was consistent with the testimony of the emergency room physician that treated Lee. (See R. 14, Ex. D, pp. 12-13.) The Illinois Appellate Court found that any error in the admission of Lee's testimony was harmless beyond a reasonable doubt. (Id.)

It is well settled that evidentiary issues such as hearsay, lack of foundation, and unfairly prejudicial evidence are generally state law claims that do not qualify for habeas relief. See Dressler v. McCaughtry, 238 F.3d 908, 914 (7th Cir. 2001); Koo v. McBride, 124 F.3d 869, 874 (7th Cir. 1997). There is an exception, however, such as where an erroneous evidentiary ruling may deprive a defendant of his or her right to a fundamentally fair trial. See e.g. Idaho v. Wright, 497 U.S. 805, 110 S. Ct. 3139, 3145-48 (1990); Dressler, 238 F.3d at 914. In this case, Richards fails to demonstrate that Lee's testimony violated Richards' constitutional rights. According to the Illinois Appellate Court, Lee's testimony was based on his personal knowledge, and any hearsay testimony

13

about Lee's injuries was harmless. As to the prejudicial effect of Lee's testimony, there is nothing in the record to support the notion that the testimony crossed the constitutional threshold necessary to warrant habeas relief. Koo, 124 F.3d at 874-75. This claim is denied on its merits.

### 4. Trial Judge Bias/Corruption:

Richards' final claim is that he was denied a fair trial because his trial judge was biased against him and was corrupt. The judge that conducted Richards' trial was Judge Patricia Schneider. Richards claims that Judge Schneider was familiar with Richards' extended family because Judge Schneider's sister lived with and had children by a man that had previously been married to Richards' mother.[3] Richards claims that Judge Schneider and this man shared "a longtime hatred of each other." (Pet. pg. 6.) Richards also asserts that Judge Schneider had personal business ties with the state's attorney's office, and with Mr. Polito, who represented Richards at trial. Finally, Richards claims that shortly after his trial, Judge Schneider was convicted of misusing her judicial authority.[4] According to Richards, the net effect of all this is that he was deprived of a fair trial.

Judicial prejudice and/or corruption can violate a criminal defendant's constitutional right to a fair trial, and can be the basis for habeas relief. See e.g. Bracy v. Gramley, 520 U.S. 899, 117 S. Ct. 1793, 1797 (1997), en banc appeal after remand, Bracy v. Schomig, – F.3d –, 2002 WL 475113 (7th Cir. Mar. 29, 2002). Judicial prejudice and corruption are rare events, so judges are

---

[3]The man that Judge Schneider's sister was involved with was not Richards' father.

[4]The record does not contain much detail concerning Judge Schneider's misconduct. Some further information may be found in Bob Merrifeld, Bretz to Regain Law Permit, Court Says Ex-Prosecutor Lost License in Scandal, Chicago Tribune Metro Southwest, March 26, 1999, reported at 1999 WL 2857364 (noting that Judge Schneider was convicted for fixing tickets issued to family and friends); Pena v. Mattox, 84 F.3d 894 (7th Cir. 1996) (discussing a suit under 42 U.S.C. § 1983 that named Judge Schneider as a defendant).

14

presumed to be honest and impartial, and this presumption can only be rebutted with specific facts demonstrating judicial impropriety. See Bracy, 117 S. Ct. at 1799; Aleman v. Judges of Circuit Court of Cook County, 138 F.3d 302, 307 (7th Cir. 1998); cf. United States v. LeFevour, 798 F.2d 977, 984-85 (7th Cir. 1986) (on direct appeal rejecting a claim of judicial bias); compare Bracy, 2002 WL 475113 at * 3 (noting that the presumption in that case had been soundly rebutted). Claims of this nature raise difficult issues, as evidenced by the Seventh Circuit's recent en banc decision in Bracy, which produced three different opinions and no clear majority. Bracy, 2002 WL 475113. As discussed below, however, Richards has procedurally defaulted these claims, and even if he had not, he fails to present sufficient evidence of judicial bias or corruption to warrant habeas relief.

First, procedural default. In his post-conviction petition, Richards raised the issue of Judge Schneider's relationship with Richards' family and her association with the state's attorney's office. The Illinois Appellate Court expressly held that Richards waived these issues by failing to bring them on direct appeal. (See R. 14, Ex. D, pp. 3-6.) Waiver is a state law finding that is independent of the federal question and is adequate to support the judgment, and which bars federal habeas relief. Lambrix, 520 U.S. at 523-24; Coleman, 501 U.S. at 729. Here, the last state court to examine Judge Schneider's relationship with Richards' family and the state's attorney office ruled that Richards waived the issue. Accordingly, the court accepts the Illinois court's finding of waiver as dispositive of the issue. Lambrix, 520 U.S. at 523-24; Coleman, 501 U.S. at 729; Braun, 227 F.3d at 912; Wilkinson v. Cowan, 231 F.3d 347, 350-51 (7th Cir. 2000).

As to the assertion of judicial corruption, Richards did not raise the issue until he filed this habeas petition. A habeas petitioner must present constitutional issues to the state court prior to seeking federal habeas relief. See O'Sullivan, 526 U.S. at 848; Spreitzer, 219 F.3d at 647-48;

15

Rodriguez, 193 F.3d at 916-17. Failure to do so bars the federal court from reviewing the claim. See O'Sullivan, 526 U.S. at 848. Therefore, this claim is defaulted.

The only avenue open to Richards is if he were to demonstrate cause for failing to raise these issues and prejudice resulting therefrom, or a fundamental miscarriage of justice. Spreitzer, 219 F.3d at 647-48; Rodriguez, 193 F.3d at 916-17. Richards fails to even attempt to do either. He offers no cause for failing to raise the issues during his direct appeal or post-conviction proceedings. And, to apply the fundamental miscarriage of justice exception, Richards must present evidence that he is actually innocent of the crime. Spreitzer, 219 F.3d at 647-48; Rodriguez, 193 F.3d at 916-17. Richards presents no such evidence, and it appears that evidence against him was overwhelming. Therefore, this court is barred from reviewing the claims.

Even if Richards did not procedurally default the claims, he offers no evidence to support an inference that Judge Schneider's bias and/or corruption deprived Richards of a fair trial. The recent Bracy decision from the Seventh Circuit contains three different opinions that are sharply divergent as to the type and amount of evidence necessary to grant habeas relief to a person who was conviction may be tainted by a corrupt judge.[5] Notwithstanding the divergent views, all Judges of the Seventh Circuit agreed that evidence of judicial bias is necessary, and that the bias be shown to

---

[5]Judge Evans authored an opinion, joined by the Chief Judge and two Circuit Judges, stating that a petitioner must demonstrate actual bias on the part of the judge. See Bracy, 2002 WL 475113 at *3-5. Judge Evans further wrote that actual bias could be established with indirect or circumstantial evidence of actual bias. Id. at *5-13. Judge Posner, joined by two Circuit Judges, was also of the opinion that actual bias was necessary, but wrote that a direct link between the actual bias and the petitioner's own case must be established through direct evidence. See id. at *13-19. Judge Rovner, joined by three Circuit Judges, wrote that the standard should be a temptation to bias, rather than actual bias, and that such bias could be shown with indirect evidence. See id. at *20-29. Judge Rovner proposed that the burden of proof should be on the state to demonstrate judicial impartiality, as opposed to current law requiring the petitioner to demonstrate the existence of bias. See id.

16

have infected the petitioner's case. See Bracy, 2002 WL 47511, at * 3. In other words, there is no per se rule requiring reversal or habeas relief for every conviction presided over by a judge that is later found to be corrupt. Id.

Richards presents no evidence that Judge Schneider was biased or corrupt in his case. Judge Schneider's association with Richards' extended family is too remote and attenuated from Richards' case to support a reasonable inference that Judge Schneider harbored some ill will towards Richards. Again, Judge Schneider's sister was involved with a man that, at one time, had been married to Richards' mother. This man was not Richards' father, and the children born by Judge Schneider's sister have no relation to Richards. As for corruption, Richards presents no evidence that Judge Schneider's alleged corruption infected his trial. All that Richards submits are some newspaper clippings about the charges against Judge Schneider, which apparently involved fixing of tickets for friends and family. While any impropriety on the part of a judge is contemptible, Richards presents no connection between Judge Schneider's misconduct and Richards' case. Habeas relief is not warranted in the absence of any evidence linking Judge Schneider's alleged bias and corruption to Richards' trial.

## III. CONCLUSION

For the foregoing reasons, the court denies Richards' application for a writ of habeas corpus under 28 U.S.C. § 2254.

IT IS SO ORDERED.

ENTER:

*[signature]*

CHARLES RONALD NORGLE, SR. Judge
United States District Court

DATED: 4-16-02